1  ANDRÉ BIROTTE JR.
   United States Attorney
2  ROBERT E. DUGDALE
   Assistant United States Attorney
3  Chief, Criminal Division
   KRISTEN A. WILLIAMS (Cal. State Bar No.: 263594)
4  Assistant United States Attorney
   Major Frauds Section
5       1100 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-0526
7       Facsimile: (213) 894-6269
        E-mail: Kristen.Williams@usdoj.gov
8  Attorneys for Plaintiff
   UNITED STATES OF AMERICA
9

10

11                    UNITED STATES DISTRICT COURT

12            FOR THE CENTRAL DISTRICT OF CALIFORNIA

13  UNITED STATES OF AMERICA,      )  CR No. _____ 01169
                                   )
14                  Plaintiff,     )  PLEA AGREEMENT FOR DEFENDANT
                                   )  HEE JUNG MUN
15             v.                  )
                                   )
16  HEE JUNG MUN,                  )
       aka "Angela Mun,"           )
17                                 )
                                   )
18              Defendant.         )
                                   )
    _____

19

20       1.   This constitutes the plea agreement between HEE JUNG

21  MUN, also known as "Angela Mun" ("defendant") and the United

22  States Attorney's Office for the Central District of California

23  ("the USAO") in the investigation of health care fraud in

24  violation of Title 18, United States Code, Section 1347.  This

25  agreement is limited to the USAO and cannot bind any other

26  federal, state, local, or foreign prosecuting, enforcement,

27  administrative, or regulatory authorities.

28

1    <u>DEFENDANT'S OBLIGATIONS</u>

2        2.   Defendant agrees to:

3            a) Give up the right to indictment by a grand jury and,
4    at the earliest opportunity requested by the USAO and provided by
5    the Court, appear and plead guilty to a single-count information
6    in the form attached to this agreement as Exhibit A or a
7    substantially similar form.

8            b) Not contest facts agreed to in this agreement.

9            c) Abide by all agreements regarding sentencing
10   contained in this agreement.

11           d) Appear for all court appearances, surrender as
12   ordered for service of sentence, obey all conditions of any bond,
13   and obey any other ongoing court order in this matter.

14           e) Not commit any crime; however, offenses that would
15   be excluded for sentencing purposes under United States
16   Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines")
17   § 4A1.2(c) are not within the scope of this agreement.

18           f) Be truthful at all times with Pretrial Services, the
19   United States Probation Office, and the Court.

20           g) Pay the applicable special assessment[s] at or
21   before the time of sentencing unless defendant lacks the ability
22   to pay and submits a completed financial statement (form OBD-500)
23   to the USAO prior to sentencing.

24           h) Not seek the discharge of any restitution
25   obligation, in whole or in part, in any present or future
26   bankruptcy proceeding.

27           i) Allow funds previously seized in connection with
28

2

this matter in the amount of $1,298,407.17 to be applied by the

Court to pay, in order of application, any restitution, special

assessments, criminal fines, and costs that defendant is required

to pay, and execute papers as necessary to accomplish this

application.

3.  Defendant further agrees:

a) Truthfully to disclose to law enforcement officials,

at a date and time to be set by the USAO, the location of,

defendant's ownership interest in, and all other information

known to defendant about, all monies, properties, and/or assets

of any kind, derived from or acquired as a result of, or used to

facilitate the commission of, defendant's illegal activities, and

to forfeit all right, title, and interest in and to such items,

specifically including all right, title, and interest in and to

all property and assets, including $1,298,407.17 seized by law

enforcement officials on or about March 2, 2011, which defendant

admits constitute the proceeds of defendant's illegal activity in

violation of Title 18, United States Code, Section 1347.

b) To the Court's entry of an order of forfeiture at or

before sentencing with respect to these assets and to the

forfeiture of the assets.

c) To take whatever steps are necessary to pass to the

United States clear title to the assets described above,

including, without limitation, the execution of a consent decree

of forfeiture and the completing of any other legal documents

required for the transfer of title to the United States.

d) Not to contest any administrative forfeiture

proceedings or civil judicial proceedings commenced against these

3

1  properties pursuant to Title 18, United States Code, Sections

2  981(a)(1)(A), (C), (b) and 984.

3         e) Not to assist any other individual in any effort

4  falsely to contest the forfeiture of the assets described above.

5         f) Not to claim that reasonable cause to seize the

6  assets was lacking.

7         g) To prevent the transfer, sale, destruction, or loss

8  of any and all assets described above to the extent defendant has

9  the ability to do so.

10        h) To fill out and deliver to the USAO a completed

11  financial statement listing defendant's assets on a form provided

12  by the USAO.

13   4.   Defendant further agrees to cooperate fully with the

14  USAO, the Federal Bureau of Investigation, and Department of

15  Health and Human Services – Office of the Inspector General, and,

16  as directed by the USAO, any other federal, state, local, or

17  foreign prosecuting, enforcement, administrative, or regulatory

18  authority.  This cooperation requires defendant to:

19        a)   Respond truthfully and completely to all questions

20  that may be put to defendant, whether in interviews, before a

21  grand jury, or at any trial or other court proceeding.

22        b)   Attend all meetings, grand jury sessions, trials

23  or other proceedings at which defendant's presence is requested

24  by the USAO or compelled by subpoena or court order.

25        c)   Produce voluntarily all documents, records, or

26  other tangible evidence relating to matters about which the USAO,

27  or its designee, inquires.

28   5.   For purposes of this agreement: (1) "Cooperation

4

1 | Information" shall mean any statements made, or documents,
2 | records, tangible evidence, or other information provided, by
3 | defendant pursuant to defendant's cooperation under this
4 | agreement; and (2) "Plea Information" shall mean any statements
5 | made by defendant, under oath, at the guilty plea hearing and the
6 | agreed to factual basis statement in this agreement.

### THE USAO'S OBLIGATIONS

8 |     6.  The USAO agrees to:

9 |     a) Not contest facts agreed to in this agreement.

10 |     b) Abide by all agreements regarding sentencing
11 | contained in this agreement.

12 |     c) At the time of sentencing, provided that defendant
13 | demonstrates an acceptance of responsibility for the offense up
14 | to and including the time of sentencing, recommend a two-level
15 | reduction in the applicable Sentencing Guidelines offense level,
16 | pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary,
17 | move for an additional one-level reduction if available under
18 | that section.

19 |     7.  The USAO further agrees:

20 |     a)    Not to offer as evidence in its case-in-chief in
21 | the above-captioned case or any other criminal prosecution that
22 | may be brought against defendant by the USAO, or in connection
23 | with any sentencing proceeding in any criminal case that may be
24 | brought against defendant by the USAO, any Cooperation
25 | Information.  Defendant agrees, however, that the USAO may use
26 | both Cooperation Information and Plea Information: (1) to obtain
27 | and pursue leads to other evidence, which evidence may be used
28 | for any purpose, including any criminal prosecution of defendant;

1  (2) to cross-examine defendant should defendant testify, or to

2  rebut any evidence offered, or argument or representation made,

3  by defendant, defendant's counsel, or a witness called by

4  defendant in any trial, sentencing hearing, or other court

5  proceeding; and (3) in any criminal prosecution of defendant for

6  false statement, obstruction of justice, or perjury.

7  b)  Not to use Cooperation Information against

8  defendant at sentencing for the purpose of determining the

9  applicable guideline range, including the appropriateness of an

10 upward departure, or the sentence to be imposed, and to recommend

11 to the Court that Cooperation Information not be used in

12 determining the applicable guideline range or the sentence to be

13 imposed.  Defendant understands, however, that Cooperation

14 Information will be disclosed to the probation office and the

15 Court, and that the Court may use Cooperation Information for the

16 purposes set forth in U.S.S.G § 1B1.8(b) and for determining the

17 sentence to be imposed.

18 c)  In connection with defendant's sentencing, to

19 bring to the Court's attention the nature and extent of

20 defendant's cooperation.

21 d)  If the USAO determines, in its exclusive judgment,

22 that defendant has both complied with defendant's obligations

23 under paragraphs 2, 3, and 4 above and provided substantial

24 assistance to law enforcement in the prosecution or investigation

25 of another ("substantial assistance"), to move the Court pursuant

26 to U.S.S.G. § 5K1.1 to fix an offense level and corresponding

27 guideline range below that otherwise dictated by the sentencing

28 guidelines, and to recommend a term of imprisonment within this

6

1   reduced range.

2   DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION

3      8.   Defendant understands the following:

4        a)   Any knowingly false or misleading statement by

5   defendant will subject defendant to prosecution for false

6   statement, obstruction of justice, and perjury and will

7   constitute a breach by defendant of this agreement.

8        b)   Nothing in this agreement requires the USAO or any

9   other prosecuting, enforcement, administrative, or regulatory

10  authority to accept any cooperation or assistance that defendant

11  may offer, or to use it in any particular way.

12       c)   Defendant cannot withdraw defendant's guilty plea

13  if the USAO does not make a motion pursuant to U.S.S.G.   § 5K1.1

14  for a reduced guideline range or if the USAO makes such a motion

15  and the Court does not grant it or if the Court grants such a

16  USAO motion but elects to sentence above the reduced range.

17       d)   At this time the USAO makes no agreement or

18  representation as to whether any cooperation that defendant has

19  provided or intends to provide constitutes or will constitute

20  substantial assistance.   The decision whether defendant has

21  provided substantial assistance will rest solely within the

22  exclusive judgment of the USAO.

23       e)   The USAO's determination whether defendant has

24  provided substantial assistance will not depend in any way on

25  whether the government prevails at any trial or court hearing in

26  which defendant testifies or in which the government otherwise

27  presents information resulting from defendant's cooperation.

28

## NATURE OF THE OFFENSE

9. Defendant understands that for defendant to be guilty of the crime charged in the information's single count (violation of Title 18, United States Code, Section 1347), the following must be true: (1) defendant knowingly and willfully devised or participated in a scheme to defraud a health care benefit program; (2) the statements made or facts omitted as part of the scheme were material; (3) defendant acted with intent to defraud; and (4) the scheme involved the delivery of or payment for health care benefits, items, or services. Defendant admits that defendant is, in fact, guilty of this offense as described in information's single count.

## PENALTIES AND RESTITUTION

10. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1347, is 10 years imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

11. Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the amount of restitution is not restricted to the amounts alleged in the count to which defendant is pleading guilty and may include losses arising from all relevant conduct in connection with that count. The parties currently believe that the applicable amount of restitution is

approximately $5,144,277.54, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

12.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

13.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.  Defendant understands that once the court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to mandatory exclusion from federal health care benefit programs for a minimum of five years, suspension or revocation of a professional license, and revocation of probation, parole, or supervised release in another case. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

14.   Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to removal, also known as deportation, which may, under some circumstances, be mandatory.  The court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

15.   Defendant and the USAO agree to the statement of facts provided below.  Defendant and the USAO agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 17 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Background

From in or around May 2008 through in or around March 2011, defendant, a registered nurse ("RN"), was the owner and operator of a home health agency called Greatcare Home Health, Inc. ("Greatcare").  During that time period, defendant enrolled Greatcare as a provider with Medicare, a federal health care benefit program that provides reimbursement for medically necessary services to persons age sixty-five years and older and to certain disabled persons.  Greatcare purported to provide home health services, including skilled nursing services and physical

10

1   therapy treatments, to Medicare beneficiaries.

2       During the time period defendant owned and operated
3   Greatcare, defendant knew the Medicare requirements for home
4   health services, including the requirements that (a) the patient
5   be confined to a home and lack a willing caregiver, (b) the
6   patient has a medical need for the services, (c) the services
7   must be provided by persons licensed within the state in which
8   they are practicing to provide those services, (d) and the home
9   health agency must maintain signed and dated clinical notes for
10  each home visit that accurately detail the services provides on
11  those visits.  Defendant also knew that it was illegal to pay or
12  receive kickbacks for the referral of patients for health
13  services paid for by Medicare.

14      The Fraudulent Scheme

15      Beginning in or around May 2008 and continuing through on or
16  about March 2, 2011, in Los Angeles County, within the Central
17  District of California, defendant, together with others working
18  at Greatcare, engaged in a scheme to defraud Medicare in which
19  they (a) paid illegal kickbacks to doctors and marketers in
20  exchange for their referrals of Medicare patients to Greatcare,
21  (b) paid illegal kickbacks to patients to induce them to sign up
22  for home health services, (c) billed Medicare for patients who
23  were not homebound or otherwise did not qualify for home health
24  services, (d) billed Medicare for services that were provided by
25  unlicensed nurses, (e) used false and exaggerated patient
26  diagnoses to generate higher Medicare reimbursement, and (f)
27  created false medical records to support false claims Greatcare
28  submitted to Medicare.

1     Defendant obtained Medicare beneficiaries for Greatcare by
2 paying doctors and marketers anywhere from $100 to $300 per 60-
3 day episode of service for each Medicare beneficiary they
4 referred to Greatcare.  Defendant also obtained Medicare
5 beneficiary information by paying patients approximately $300 to
6 induce them to sign up with Greatcare for home health services.
7 Defendant paid the majority of these marketers, doctors, and
8 patients in cash or in checks from her personal bank account in
9 an effort to conceal the illegal kickbacks.

10     As defendant knew, many of those Medicare beneficiaries
11 referred by the marketers and doctors and paid by defendant did
12 not need skilled nursing or physical therapy services.  Defendant
13 hired employees who were licensed to provide nursing and physical
14 therapy services in order to fill out and sign off on fraudulent
15 Outcome and Assessment Information Set ("OASIS") forms for
16 Greatcare patients.  The OASIS form is part of an initial
17 assessment conducted by a registered nurse for all Medicare
18 patients receiving home health services and is used in
19 determining Medicare reimbursement.  The severity of the
20 beneficiary's health condition and care needs as indicated on the
21 OASIS form affected the level of Medicare reimbursement to the
22 provider.  On Greatcare's OASIS forms, defendant and Greatcare
23 employees acting at defendant's instruction falsely claimed that
24 patients were unable or unwilling to administer their own
25 medication and required skilled nursing services.  On those OASIS
26 forms, defendant and her co-schemers also entered diagnoses that
27 defendant knew the patients did not have and which were different
28 from the diagnoses reflected on the doctors' orders for home

1  health services.  The false statements made by defendant and
2  other Greatcare employees at her instruction were material, in
3  that Medicare relied upon the information from the OASIS forms
4  about the severity of the patient's condition and necessity for
5  home health services in determining Greatcare's reimbursement.

6      Though defendant assigned Greatcare patients to herself and
7  licensed Greatcare employees to conduct home health visits,
8  defendant knew that neither she nor these other licensed
9  employees conducted the majority of those visits.  As defendant
10 knew, some of these visits were not conducted by anyone, while
11 others were conducted, at defendant's instruction, by two
12 individuals whom defendant hired to make home visits to Medicare
13 beneficiaries knowing that the individuals lacked nursing or
14 physical therapy licenses in California.  Defendant and her
15 licensed co-schemers at Greatcare signed skilled nursing notes
16 falsely claiming they had visited patients they in fact had not
17 visited.  These false statements made by defendant and other
18 Greatcare employees at defendant's instruction were material, in
19 that Medicare required Greatcare to maintain accurate and
20 detailed skilled nursing notes to support the services for which
21 Greatcare billed Medicare.

22     At defendant's direction, Greatcare submitted claims to
23 Medicare for beneficiaries who were recruited by the payment of
24 illegal kickbacks and who did not medically need the services
25 billed and often did not receive them or received them from
26 unlicensed individuals.  Defendant knowingly and willfully
27 submitted these fraudulent claims in order to deceive Medicare
28 and to obtain payments of Medicare money to which she was not

1  entitled.   These fraudulent claims were material in that they
2  induced Medicare to reimburse Greatcare for services it had
3  allegedly provided.

4          Execution of the Scheme to Defraud

5          On or about March 1, 2011, in furtherance of the scheme to
6  defraud Medicare, defendant knowingly, willfully, and with the
7  intent to defraud Medicare caused Greatcare to submit a false
8  claim to Medicare for skilled nursing services purportedly
9  provided by Greatcare to Medicare beneficiary S.H. between
10  November 24, 2010, and December 3, 2010.   At the time, defendant
11  knew that beneficiary S.H. did not medically need home health
12  services.   Defendant caused Greatcare to bill the claim for S.H.
13  to Medicare using a diagnosis (acute bronchitis) that was
14  different from and more severe than the diagnosis indicated on
15  the referring doctor's order for home health (dehydration).
16  Defendant paid a total of $600 in illegal kickbacks to
17  beneficiary S.H. to induce S.H. to sign up for multiple episodes
18  of care with Greatcare, and had paid $300 in illegal kickbacks to
19  an employee of the referring doctor in exchange for the doctor's
20  referral of S.H. to Greatcare.   Medicare paid Greatcare $2,700.60
21  on this false claim.

22          Obstruction

23          In or around March 2011, defendant assisted a doctor to whom
24  she had previously paid illegal kickbacks in creating patient
25  files for Medicare beneficiaries the doctor had referred to
26  Greatcare.   Defendant provided the doctor with Greatcare billing
27  data and false information about the patients' medical conditions
28  to help the doctor fabricate patient files that would support

                              14

1   Greatcare's claims for payment.  Defendant also instructed at

2   least two other Greatcare employees to enter beneficiary

3   information into the files and to obtain signatures from Medicare

4   beneficiaries for the files.  Defendant provided the Greatcare

5   billing data and falsified information knowing and intending for

6   it to be used to create fraudulent patient files purportedly

7   supporting patient referrals made to Greatcare that would then be

8   submitted to federal agents.

9        Loss to Medicare

10       The loss to Medicare from defendant's scheme was

11  approximately $5,144,277.54.

12                          SENTENCING FACTORS

13       16.  Defendant understands that in determining defendant's

14  sentence the Court is required to consider the factors set forth

15  in 18 U.S.C. § 3553(a)(1)-(7), including the kinds of sentence

16  and sentencing range established under the Sentencing Guidelines.

17  Defendant understands that the Sentencing Guidelines are advisory

18  only, that defendant cannot have any expectation of receiving a

19  sentence within the Sentencing Guidelines range, and that after

20  considering the Sentencing Guidelines and the other § 3553(a)

21  factors, the Court will be free to exercise its discretion to

22  impose any sentence it finds appropriate up to the maximum set by

23  statute for the crime of conviction.

24       17.  Defendant and the USAO agree to the following

25  applicable Sentencing Guidelines factors:

26       Base Offense Level  :     6    [U.S.S.G. § 2B1.1(a)(1)]

27       Loss Amount Between
         $2.5 Million and
28       $7 Million          :    +18   [U.S.S.G. § 2B1.1(b)(1)(J)]

                                    15

1      Obstruction        :    +2   [U.S.S.G. § 3C1.1]

2 Defendant and the USAO reserve the right to argue that additional

3 specific offense characteristics, adjustments, and departures

4 under the Sentencing Guidelines are appropriate.  Specifically,

5 the government reserves the right to argue for enhancements for

6 aggravated role under U.S.S.G. § 3B1.1(a) and abuse of a position

7 of trust under U.S.S.G. § 3C1.1.

8     18.  Defendant understands that there is no agreement as to

9 defendant's criminal history or criminal history category.

10     19.  Defendant and the USAO reserve the right to argue for a

11 sentence outside the sentencing range established by the

12 Sentencing Guidelines based on the factors set forth in 18 U.S.C.

13 § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

14               <u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

15     20.  Defendant understands that by pleading guilty,

16 defendant gives up the following rights:

17           a) The right to persist in a plea of not guilty.

18           b) The right to a speedy and public trial by jury.

19           c) The right to the assistance of an attorney at trial,

20 including the right to have the Court appoint an attorney to

21 represent defendant at trial.  Defendant understands, however,

22 that, despite defendant's guilty plea, defendant retains the

23 right to be represented by an attorney -- and, if necessary, to

24 have the Court appoint an attorney if defendant cannot afford one

25 -- at every other stage of the proceeding.

26           d) The right to be presumed innocent and to have the

27 burden of proof placed on the government to prove defendant

28 guilty beyond a reasonable doubt.

1      e) The right to confront and cross-examine witnesses

2  against defendant.

3      f) The right to testify on defendant's own behalf and

4  present evidence in opposition to the charges, including calling

5  witnesses and subpoenaing those witnesses to testify.

6      g) The right not to be compelled to testify, and, if

7  defendant chose not to testify or present evidence, to have that

8  choice not be used against defendant.

9      h) Any and all rights to pursue any affirmative

10  defenses, Fourth Amendment or Fifth Amendment claims, and other

11  pretrial motions that have been filed or could be filed.

12                    WAIVER OF APPEAL OF CONVICTION

13     21. Defendant understands that, with the exception of an

14  appeal based on a claim that defendant's guilty plea were

15  involuntary, by pleading guilty defendant is waiving and giving

16  up any right to appeal defendant's conviction on the offense to

17  which defendant is pleading guilty.

18            LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

19     22.  Defendant agrees that, provided the Court imposes a

20  total term of imprisonment on all counts of conviction of no more

21  than 108 months, defendant gives up the right to appeal all of

22  the following: (a) the procedures and calculations used to

23  determine and impose any portion of the sentence; (b) the term of

24  imprisonment imposed by the Court; (c) the fine imposed by the

25  court, provided it is within the statutory maximum; (d) the

26  amount and terms of any restitution order, provided it requires

27  payment of no more than $5,144,277.54; (e) the term of probation

28  or supervised release imposed by the Court, provided it is within

1 the statutory maximum; and (f) any of the following conditions of
2 probation or supervised release imposed by the Court: the
3 standard conditions set forth in General Orders 318, 01-05,
4 and/or 05-02 of this Court; the drug testing conditions mandated
5 by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug
6 use conditions authorized by 18 U.S.C. § 3563(b)(7).

7     23.  The USAO agrees that, provided (a) all portions of the
8 sentence are at or below the statutory maximum specified above
9 and (b) the Court imposes a term of imprisonment of no less than
10 87 months, the USAO gives up its right to appeal any portion of
11 the sentence, with the exception that the USAO reserves the right
12 to appeal the amount of restitution ordered if that amount is
13 less than $5,144,277.54.

14                  RESULT OF WITHDRAWAL OF GUILTY PLEA

15     24.  Defendant agrees that if, after entering a guilty plea
16 pursuant to this agreement, defendant seeks to withdraw and
17 succeeds in withdrawing defendant's guilty plea on any basis
18 other than a claim and finding that entry into this plea
19 agreement was involuntary, then (a) the USAO will be relieved of
20 all of its obligations under this agreement, including in
21 particular its obligations regarding the use of Cooperation
22 Information; (b) in any investigation, criminal prosecution, or
23 civil, administrative, or regulatory action, defendant agrees
24 that any Cooperation Information and any evidence derived from
25 any Cooperation Information shall be admissible against
26 defendant, and defendant will not assert, and hereby waives and
27 gives up, any claim under the United States Constitution, any
28 statute, or any federal rule, that any Cooperation Information or

1 | any evidence derived from any Cooperation Information should be
2 | suppressed or is inadmissible

3 | <u>EFFECTIVE DATE OF AGREEMENT</u>

4 |     25.  This agreement is effective upon signature and
5 | execution of all required certifications by defendant,
6 | defendant's counsel, and an Assistant United States Attorney.

7 | <u>BREACH OF AGREEMENT</u>

8 |     26.  Defendant agrees that if defendant, at any time after
9 | the signature of this agreement and execution of all required
10 | certifications by defendant, defendant's counsel, and an
11 | Assistant United States Attorney, knowingly violates or fails to
12 | perform any of defendant's obligations under this agreement ("a
13 | breach"), the USAO may declare this agreement breached.  For
14 | example, if defendant knowingly, in an interview, before a grand
15 | jury, or at trial, falsely accuses another person of criminal
16 | conduct or falsely minimizes defendant's own role, or the role of
17 | another, in criminal conduct, defendant will have breached this
18 | agreement.  All of defendant's obligations are material, a single
19 | breach of this agreement is sufficient for the USAO to declare a
20 | breach, and defendant shall not be deemed to have cured a breach
21 | without the express agreement of the USAO in writing.  If the
22 | USAO declares this agreement breached, and the Court finds such a
23 | breach to have occurred, then:

24 |     (a) If defendant has previously entered a guilty plea
25 | pursuant to this agreement, defendant will not be able to
26 | withdraw the guilty plea.

27 |     (b) The USAO will be relieved of all its obligations
28 | under this agreement; in particular, the USAO: (i) will no longer

19

1   be bound by any agreements concerning sentencing and will be free
2   to seek any sentence up to the statutory maximum for the crime to
3   which defendant has pleaded guilty; and (ii) will no longer be
4   bound by any agreement regarding the use of Cooperation
5   Information and will be free to use any Cooperation Information
6   in any way in any investigation, criminal prosecution, or civil,
7   administrative, or regulatory action.

8        c)   The USAO will be free to criminally prosecute
9   defendant for false statement, obstruction of justice, and
10  perjury based on any knowingly false or misleading statement by
11  defendant.

12       d)   In any investigation, criminal prosecution, or
13  civil, administrative, or regulatory action: (i) defendant will
14  not assert, and hereby waives and gives up, any claim that any
15  Cooperation Information was obtained in violation of the Fifth
16  Amendment privilege against compelled self-incrimination; and
17  (ii) defendant agrees that any Cooperation Information and any
18  Plea Information, as well as any evidence derived from any
19  Cooperation Information or any Plea Information, shall be
20  admissible against defendant, and defendant will not assert, and
21  hereby waives and gives up, any claim under the United States
22  Constitution, any statute, Rule 410 of the Federal Rules of
23  Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure,
24  or any other federal rule, that any Cooperation Information, any
25  Plea Information, or any evidence derived from any Cooperation
26  Information or any Plea Information should be suppressed or is
27  inadmissible.

28

## COURT AND PROBATION OFFICE NOT PARTIES

27. Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

28. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations, and ©) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations are not error, although each party agrees to maintain its view that the calculations in paragraph 17 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

29. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a

1  binding prediction or promise regarding the sentence defendant

2  will receive, except that it will be within the statutory

3  maximum.

### NO ADDITIONAL AGREEMENTS

5      30.   Defendant understands that, except as set forth herein,

6  there are no promises, understandings, or agreements between the

7  USAO and defendant or defendant's attorney, and that no

8  additional promise, understanding, or agreement may be entered

9  into unless in a writing signed by all parties or on the record

10  in court.

### PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

12      31.   The parties agree that this agreement will be

13  considered part of the record of defendant's guilty plea hearing

14  as if the entire agreement had been read into the record of the

15  proceeding.

16  AGREED AND ACCEPTED

17  UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF CALIFORNIA

18
    ANDRÉ BIROTTE JR.
19  United States Attorney

20

21  _____        12/2/11
    KRISTEN A. WILLIAMS                    Date
22  Assistant United States Attorney

23

24  _____        12/01/11
    HEE JUNG MUN                           Date
25  Defendant

26  _____        12-1-11
    ANDREW PLIER                           Date
27  Attorney for Defendant
    HEE JUNG MUN
28

1                  <u>CERTIFICATION OF DEFENDANT</u>

2      I have read this agreement in its entirety.  I have had

3 enough time to review and consider this agreement, and I have

4 carefully and thoroughly discussed every part of it with my

5 attorney.  I understand the terms of this agreement, and I

6 voluntarily agree to those terms.  I have discussed the evidence

7 with my attorney, and my attorney has advised me of my rights, of

8 possible pretrial motions that might be filed, of possible

9 defenses that might be asserted either prior to or at trial, of

10 the sentencing factors set forth in 18 U.S.C. § 3553(a), of

11 relevant Sentencing Guidelines provisions, and of the

12 consequences of entering into this agreement.  No promises,

13 inducements, or representations of any kind have been made to me

14 other than those contained in this agreement.  No one has

15 threatened or forced me in any way to enter into this agreement.

16 I am satisfied with the representation of my attorney in this

17 matter, and I am pleading guilty because I am guilty of the

18 charges and wish to take advantage of the promises set forth in

19 this agreement, and not for any other reason.

20

21 _____      12/01/11 _____

22 HEE JUNG MUN                            Date
    Defendant

23

24

25

26

27

28

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am HEE JUNG MUN's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of her rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____   _12-1-11_
ANDREW FLIER           Date
Attorney for Defendant
HEE JUNG MUN

24