ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
KRISTEN A. WILLIAMS (Cal. Bar No. 263594)
Assistant United States Attorney
Major Frauds Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-0526
Facsimile: (213) 894-6269
E-mail: Kristen.Williams@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

HEE JUNG MUN,

Defendant.

No. CR 11-1169-DDP

GOVERNMENT'S SENTENCING POSITION RE: DEFENDANT HEE JUNG MUN; 5K1.1 DEPARTURE MOTION; EXHIBIT A; DECLARATION OF KRISTEN A. WILLIAMS

Hearing Date: July 28, 2014
Hearing Time: 1:30PM
Location: Courtroom of the Hon. Dean D. Pregerson

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Kristen A. Williams, hereby files its Sentencing Position and 5K1.1 Departure Motion Regarding Defendant Hee Jung Mun.

This position is based upon the attached memorandum of points and authorities, exhibit, declaration of Assistant United States

Attorney Kristen A. Williams, the presentence report, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 9, 2014

Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

  /s/
KRISTEN A. WILLIAMS
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION PAGE

**Contents**

TABLE OF AUTHORITIES....................iv

MEMORANDUM OF POINTS AND AUTHORITIES....................1

I. INTRODUCTION....................1

II. PROCEDURAL BACKGROUND....................1

III. STATEMENT OF FACTS....................2

IV. THE PRESENTENCE REPORT....................4

V. SECTION 5K1.1 MOTION....................4

VI. ARGUMENT....................5

A. Legal Standard....................6

B. Nature and Circumstances of the Offense....................7

C. History and Characteristics of the Defendant....................7

D. Need to Provide Restitution....................8

E. Protection of the Public from Further Crimes by the Defendant....................8

F. Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, and Afford Adequate Deterrence....................9

G. The Need to Avoid Unwarranted Sentencing Disparities.....10

H. Combined Analysis....................11

VII. CONCLUSION....................11

DECLARATION OF KRISTEN A. WILLIAMS....................12

# TABLE OF AUTHORITIES

DESCRIPTION PAGE

**FEDERAL CASES**

United States v. Greatcare, et al., CV 10-1988-SVW....2, 3

United States v. Cantrell, 433 F.3d 1296 (9th Cir. 2006)....6

United States v. Knows His Gun, 438 F.3d 913 (9th Cir. 2006)....7

United States v. Mares, 402 F.3d 511 (5th Cir. 2005)....10

United States v. Nichols, 464 F.3d 1117 (9th Cir. 2006)....6, 7

**FEDERAL STATUTES**

18 U.S.C. § 3553(a)....6

42 U.S.C. § 1320a-7(a)(1)....8

**STATE STATUTES**

Cal. Bus. & Prof. Code § 2761....8

**OTHER AUTHORITIES**

U.S.S.G. § 5K1.1....4

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The government hereby files its sentencing position for defendant Hee Jung Mun ("defendant"), who has pled guilty to an Information charging her with health care fraud in connection with a scheme at Greatcare Home Health ("Greatcare").

The government agrees with the PSR's calculation of the applicable offense level as 29 and Sentencing Guidelines range of 87-108 months. The government further moves for a four-level departure under Section 5K1.1, bringing defendant's applicable offense level to 25 and range to 57-71 months. Considering the sentencing factors laid out in 18 U.S.C. § 3553(a), the aggravating and mitigating factors in this case, and the defendant's substantial assistance to the government, the government recommends the Court impose a 57-month custodial sentence, followed by three years supervised release, and a restitution order of $5,144,277.54.

## II. PROCEDURAL BACKGROUND

On January 11, 2012, defendant pled guilty to an Information charging a single count of health care fraud, in violation of 18 U.S.C. § 1347, pursuant to a plea agreement. The charge stems from defendant's orchestration of a scheme to recruit Medicare beneficiaries and submit fraudulent billing for medically unnecessary home health services that were either never provided or provided by unlicensed individuals.

On August 9, 2012, the USPO issued a PSR calculating a Guidelines range of 87-108 months based on a total offense level of 29 and a criminal history category of I. (PSR ¶ 91; CR 17.) In its accompanying recommendation letter, the USPO recommended a mid-range

Guideline sentence of 96 months. (USPO Recommendation Letter ("USPO Rec. Letter") at 2; CR 16.) The USPO further recommended a three-year term of supervised release and a restitution order of $5,144,277.54. (Id. at 1.)

Defendant has not yet filed a sentencing position.

**III. STATEMENT OF FACTS**

This investigation began with a whistleblower complaint regarding false claims to Medicare. See United States v. Greatcare, et al., CV 10-1988-SVW. (PSR ¶¶ 9, 21 n.3.) Defendant, a registered nurse ("RN"), was the owner and operator of Greatcare, a home health agency, between May 2008 and March 2011, when the government executed a search warrant that shut Greatcare down. (PSR ¶¶ 10, 21.) Defendant orchestrated the scheme to defraud Medicare at Greatcare in a variety of ways: (1) defendant paid illegal kickbacks to doctors and marketers for referrals and to Medicare beneficiaries for enrolling with Greatcare; (2) defendant submitted claims for patients who did not need home health; and (3) defendant fabricated and directed others to fabricate documentation that made it appear as though home health services were necessary, that beneficiaries were sicker than they actually were, and that services were being provided by licensed individuals when, in fact, those services often were not provided or were provided by unlicensed individuals. (PSR ¶¶ 13-19.) Defendant did so knowing full well the Medicare requirements for home health services and the illegality of kickbacks for referrals. (PSR ¶ 11.) Defendant received at least $1.5 million through Greatcare.

Medicare paid Greatcare $5,144,277.54 for its false and fraudulent claims for home health services.[1]  (PSR ¶ 22.)

After Greatcare was shut down, defendant also directed others in obstructing a federal investigation.  The FBI subpoenaed Dr. Whan Sil Kim[2] for her patient files related to the patients she referred to Greatcare.  (PSR ¶ 23.)  Dr. Kim did not have many files at the time of the subpoena, so defendant and Greatcare employees Yeong Ja Lee ("Y. Lee")[3] and Jung Sook Lee ("J. Lee")[4] helped Dr. Kim create files, often using made up information that they guessed at based on the Greatcare billing data that defendant provided.  (Id.)  These files were later submitted to federal agents.  (Id.)

Aside from her work at Greatcare, defendant was also employed at (and encouraged other Greatcare RNs to work at) other home health agencies, including Jubilee Home Health, that operated in a manner similar to Greatcare.  (PSR ¶ 42, Ex. A at 13-15, 19-20.)  For reasons that are not clear, defendant directed those other RNs to give her the payments they received from Jubilee and deposited them into her own corporation bank account.  (PSR ¶ 42, Ex. A at 15, 20.)

---

[1] As the PSR notes, $1.298 million was seized from Mun's bank accounts in March 2011.  (PSR ¶ 21)  Some co-schemers have signed settlement agreements and made payments in that case.  For example, Seonweon Kim agreed to pay $205,000, and, as of this filing, has paid approximately $103,000.  Uncharged individuals Dr. Bo Paik and Dr. Dong Shin have agreed to pay $530,000 and $217,810, respectively.  As of this filing, Dr. Paik has paid $530,000, and Dr. Shin has paid $180,000.  A $14.9 million dollar default judgment was entered in that civil case with respect to defendant.  (CV 10-1988-SVW, CR 117.)

[2] Dr. Kim was charged in related case CR 12-588-DDP, and was previously sentenced to a year and a day in custody. (PSR ¶ 7.)

[3] Y. Lee was charged in related case CR 12-397-DDP, and is scheduled to be sentenced on July 24, 2014.  (PSR ¶ 7.)

[4] J. Lee was charged in related case CR 12-15-DDP, and is scheduled to be sentenced on July 28, 2014.  (PSR ¶ 7.)

**IV. THE PRESENTENCE REPORT**

The government has no objections to the PSR.

**V. SECTION 5K1.1 MOTION**

The government hereby moves for a four-level departure under Guidelines Section 5K1.1 based on defendant's provision of substantial assistance to the government. Under Section 5K1.1, the government may make a motion for a departure from the Guidelines range when "the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense." U.S.S.G. § 5K1.1. In determining the appropriate reduction, the Court may consider (1) the significance and usefulness of the defendant's assistance; (2) the truthfulness, completeness, and reliability of any information or testimony provided by defendant; (3) the nature and extent of the assistance; (4) any risks defendant incurred in providing the assistance; and (5) the timeliness of the assistance. Id.

Defendant substantially assisted the government in charging and obtaining pleas from seven related defendants who participated in the Greatcare scheme, and in investigating two other referring doctors who ultimately agreed to civil settlements related to Greatcare. (See supra n.1.) After some initial dissembling, defendant proffered, pre-indictment, regarding her conduct at Greatcare. Defendant then went on to meet with the government on multiple other occasions between August 2011 and May 2013, providing additional information and documentation regarding those co-schemers. Defendant also testified under oath in anticipation of the charges against Dr. Kim and Y. Lee. More recently, defendant met with the government regarding and was prepared to testify at the trial against Y. Lee;

defendant did not end up testifying only because Y. Lee ultimately pled guilty.

Defendant’s assistance warrants a four-level departure under Section 5K1.1. Defendant provided timely, significant assistance regarding three individuals with equal culpability (Drs. Kim, Shin, and Paik) and six individuals with lesser culpability (Ji Hae Kim, Hwa Ja Kim, Seonweon Kim, J. Lee, Y. Lee, and Sang Whan Ahn). At the time of defendant’s assistance, the government was in possession of considerable evidence against these other individuals and could have proceeded without defendant’s assistance against all but the three doctors. However, defendant’s cooperation was nonetheless helpful against all, and essential with respect to the charging of Dr. Kim. Defendant’s statements were produced to the related defendants and her plea implicating them was publicly filed and may have led to those defendants’ guilty pleas. Defendant’s statements and plea may have also motivated Drs. Shin and Paik to sign the civil settlement agreements. Defendant’s assistance was largely truthful. The government has no information that she faced any threats or danger in providing it. For these reasons, under the Section 5K1.1 analysis, defendant’s assistance has earned a four-level departure. With this four-level departure, defendant’s total offense level falls to 25, with an applicable Guidelines range of 57-71 months.

**VI. ARGUMENT**

The government recommends a 57-month custodial sentence, followed by a three-year term of supervised release, and a restitution order of $5,144,277.54.

**A.   Legal Standard**

While not definitive, the Guidelines range provides the starting point for finding a reasonable sentence and must then be considered with the factors set forth in Section 3553(a).[5]  See United States v. Cantrell, 433 F.3d 1296, 1279 (9th Cir. 2006).  "To comply with the requirements of Booker, the district court must have sufficiently considered the Guidelines as well as the other factors listed in § 3553(a).  This requirement does not necessitate a specific articulation of each factor separately, but rather a showing that the district court considered the statutorily-designated factors in imposing a sentence."  United States v. Nichols, 464 F.3d 1117, 1125

---

[5] The § 3553(a) factors are as follows:

(1)  The nature and circumstances of the offense and the history and characteristics of the defendant;
(2)  The need for the sentence imposed:
   (A)  To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B)  To afford adequate deterrence to criminal conduct;
   (C)  To protect the public from further crimes of the defendant; and
   (D)  To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3)  The kinds of sentences available;
(4)  The kinds of sentence and the sentencing range established [for the offense and the defendant as set forth in the Sentencing Guidelines];
(5)  Any pertinent policy statement . . . ;
(6)  The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7)  The need to provide restitution to any victims of the offense.
18 U.S.C. § 3553(a).

(9th Cir. 2006) (quoting United States v. Knows His Gun, 438 F.3d 913, 918 (9th Cir. 2006)).

**B. Nature and Circumstances of the Offense**

For nearly three years, defendant managed a scheme to defraud Medicare that led to more than $5 million in losses to Medicare, a program that can hardly afford them. She directed numerous others in executing the scheme, perverting the legitimate home health process at every turn, from patient enrollment to billing to record keeping.

In aggravation, defendant orchestrated this scheme to defraud Medicare and obtain a substantial amount of money in a relatively short time, with little concern for the elderly, vulnerable Medicare population she was exploiting. When an investigation threatened, her first impulse was to create still more false records to try to cover her tracks. She benefitted handsomely from the scheme, receiving large amounts of the proceeds and living at the time in an upscale neighborhood. (PSR ¶ 82.) She only stopped committing fraud at Greatcare when the government shut Greatcare down.

In mitigation, the government is not aware of any patient harm that resulted from defendant's conduct.

**C. History and Characteristics of the Defendant**

Based on the information provided, defendant appears to have had a fairly stable childhood, absent of the sort of disadvantages and abuse this Court frequently sees. Moreover, unlike many defendants, defendant had the education and professional qualifications to earn a living by lawful means, particularly given the well-known nursing shortage in this country. (PSR ¶¶ 65-68.) Defendant did work before Greatcare in the home health field. (PSR ¶ 73.) However, several of her places of employment appear to have also been tied to fraud, thus

undermining any claim that the current conduct is an aberration. (See PSR ¶ 42.)

**D. Need to Provide Restitution**

Nearly $1.2 million was seized from bank accounts defendant controlled in March 2011. As a part of her plea agreement, defendant agreed that these funds could be applied to any restitution ordered. (See Plea Agmt. ¶ 2(i), CR 4.) Defendant's ability to provide additional restitution in the future will be limited by (1) her exclusion from the Medicare program and (2) the revocation of her nursing license, both likely consequences of her felony conviction in this case. See 42 U.S.C. § 1320a-7(a)(1) (concerning mandatory exclusion for those convicted of criminal offenses related to the delivery of health care services); Cal. Bus. & Prof. Code § 2761 (including conviction of a felony substantially related to the qualifications, functions, and duties of an RN as grounds for discipline by the licensing board). The recommended period of incarceration (during which she would have to make nominal restitution payments), followed by a three year period of supervised release in which she is obligated to make restitution payments (USPO Rec. Letter at 1-2) will provide an opportunity for at least some repayment of the losses she caused.

**E. Protection of the Public from Further Crimes by the Defendant**

As noted above, defendant will likely be excluded from being a Medicare provider and lose her license by virtue of her conviction, which goes some way towards protecting the public. However, the government notes that defendant has not voluntarily surrendered her license, meaning that, absent quick action by the licensing board,

defendant's license will remain valid through 2015, creating a risk that defendant will attempt to reenter the extensive networks of Los Angeles health care fraud.  Moreover, while she will not be able to enroll as a provider with Medicare (and technically no Medicare provider will be able to bill for her services), it may be difficult for Medicare to determine if she is involved with a provider, creating additional risks.

      **F.   Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, and Afford Adequate Deterrence**

The seriousness of this offense and defendant's conduct evidencing a lack of respect for the law (including both her conduct in this case and her apparent involvement in similar conduct at other home health agencies) are aggravating factors.  Most significantly, however, a substantial custodial sentence is warranted in light of the need to deter generally individuals like defendant who are the gatekeepers of health care fraud and who encourage Medicare to rely on their license and certifications of medical necessity and statements about services provided.  Medicare trusted in defendant's promise to submit only truthful and accurate claims, and defendant repaid that trust with a $5 million fraud scheme.  Unfortunately, home health fraud like that at Greatcare is not unique; the government has seen similar schemes in this district, where home health is a multi-billion dollar industry.  The best weapon against fraud in the face of this sort of volume is substantial sentences that are well-publicized.  A sentence lower than the 57 months recommended by the government would undermine need to provide adequate deterrence.

**G. The Need to Avoid Unwarranted Sentencing Disparities**

A sentence within the Guidelines range is usually the best way to avoid sentencing disparities. See United States v. Mares, 402 F.3d 511, 518-19 (5th Cir. 2005). Because this case should be viewed in the context of the numerous related cases, the chart below (arranged from most to least culpable when both offense conduct and cooperation have been taken into account) places defendant in relation to her co-schemers.[6] The chart also depicts both the government's recommendations and the Court's sentences for those who have been sentenced, in an effort to help the Court see the integrity of the government's recommendations and consider the sentences given to other co-schemers in arriving at the most reasonable sentence here.

| Defendant and Case No. | Loss | 5K1.1 Departure | Other Factors | Gov't Rec. | Sentence |
|---|---|---|---|---|---|
| **Hee Jung Mun CR 11-1169** | **$5.144M** | **4 levels** | **Licensed professional, obstruction, organizer of scheme** | **57 months** | |
| Whan Sil Kim CR 12-572 | $1.088M | Under Seal | Licensed professional, obstruction, age and medical issues, low personal benefit ($20-30,000), pre-indictment plea | 41 mos. | 12 mos. + 1 day |
| Ji Hae Kim CR 11-1082 | $1.136M | None | Licensed professional, pre-indictment plea | 37 mos.[7] | |

[6] The chart does not include information about 5K1.1 departures, if any, in sentencing positions that have been filed under seal. The government respectfully refers the Court to those under seal pleadings for that information.

[7] Ji Hae Kim is currently a fugitive, having fled the country shortly before her scheduled sentencing. In light of this, the government's recommendation will likely be higher if Ms. Kim is found and returned to this country for sentencing.


| Defendant and Case No. | Loss | 5K1.1 Departure | Other Factors | Gov't Rec. | Sentence |
|---|---|---|---|---|---|
| Hwa Ja Kim CR 12-59 | $1.004M | None | Licensed professional, pre-indictment plea, 1-level variance to avoid disparity | 33 mos. | 18 mos. |
| Seonweon Kim CR 12-9 | $1.867M | 5 levels | Licensed professional, two separate schemes, pre-indictment plea, partial repayment | 21 mos.[8] | |
| Jung Sook Lee CR 12-15 | $539,149 | 3 levels | Obstruction, pre-indictment plea, low personal benefit ($61,000) | 21 mos. | |
| Yeong Ja Lee CR 12-397 | $190,873 | None | Obstruction, low personal benefit ($48,000) | 18 mos. | |
| Sang Whan Ahn CR 12-588 | $676,066 | Under Seal | Pre-indictment plea, family circumstances | 6 mos. + 6 mos. home detention | |

**H. Combined Analysis**

Considering all of the above factors, as well as defendant's substantial assistance to the government, the government recommends that the Court sentence defendant to 57 months imprisonment, at the low end of the applicable Guidelines range. Such a sentence adequately addresses the mitigating factors in this case, while still recognizing the seriousness of defendant's offense and the need for general deterrence.

## VII. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to 57 months imprisonment, to be followed by a three-year term of supervised release, and a restitution order of $5,144,277.54.

---

[8] The government learned of Mr. Kim's civil payments after it filed its sentencing position and expects to revise its position accordingly.

**DECLARATION OF KRISTEN A. WILLIAMS**

I, Kristen A. Williams, state and declare as follows:

1. I am an Assistant United States Attorney ("AUSA") for the Central District of California and the attorney assigned to the prosecution of United States v. Hee Jung Mun, CR No. 11-1169-DDP. I make this declaration in support of the Government's Sentencing Position Re: Defendant Hee Jung Mun.

2. Exhibit A, which is attached to this pleading, consists of true and correct copies of reports of law enforcement interviews with related defendants Ji Hae Kim and Hwa Ja Kim, which were conducted on August 15, 2011, and January 11, 2012, respectively. I received these interview reports from the agents working on this investigation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief and that this declaration was executed on July 9, 2014, at Los Angeles, California.

/s/
KRISTEN A. WILLIAMS